# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

ADALBERTO PEREZ-FUENTES,
A# 235 549 785,

      Petitioner,

      v.

WARDEN, Pike County
Correctional Facility,

      Respondent.

CIVIL ACTION NO. 3:26-cv-01451

(SAPORITO, J.)

## MEMORANDUM

On May 28, 2026, the Court received and filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, signed and mailed by the pro se petitioner on May 16, 2026. Doc. 1. In this petition, Adalberto Perez-Fuentes, a native and citizen of Honduras, challenges the legality of his pre-removal immigration detention without an individualized bond hearing. At the time of filing, Perez-Fuentes was being held in the custody of United States Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility, located in Pike County, Pennsylvania.

## I. BACKGROUND AND PROCEDURAL HISTORY

Perez-Fuentes initially entered the United States without

inspection at or near an unknown place and on or about an unknown date. Perez-Fuentes has no criminal history in the United States. Resp. Ex. 1, Doc. 5-2.

On August 9, 2025, ICE officers stopped the vehicle in which Perez-Fuentes was traveling to work along with two other individuals, and he was taken into custody and detained. Perez-Fuentes was initially transported to Clinton County Correctional Facility, and then later transferred to Pike County Correctional Facility, where he remains in civil immigration detention. Resp. Ex. 1. Following his arrest and detention, Perez-Fuentes was served with a Notice to Appear, DHS Form I-862, dated August 9, 2025, which declared him to be subject to removal as an "alien present in the United States who has not been admitted or paroled,"[1] and which directed him to appear for a hearing before an immigration judge in Elizabeth, New Jersey, on August 26, 2025. Resp. Ex. 3, Doc. 5-3.

On or about February 9, 2025, while in civil immigration detention, Perez-Fuentes filed an application for asylum and withholding of

---

[1] Notably, a box on the Notice for declaring him to be an "arriving alien" was *not* checked. Resp. Ex. 3, Doc. 5-3.

removal, including withholding of removal under the Convention Against Torture. Pet. Ex. B, Doc. 1-2; *see also* Resp. Ex. 1. On December 3, 2025, Perez-Fuentes's application for asylum and withholding of removal, including withholding of removal under the Convention Against Torture, was denied by an immigration judge who ordered his removal to Honduras. Resp. Ex. 4, Doc. 5-5. Perez-Fuentes has timely filed an appeal of the immigration judge's decision to the Board of Immigration Appeals, which remains pending. Resp. Ex. 5, Doc. 5-6.

Throughout his period of detention, Perez-Fuentes has been denied any opportunity to post bond or to be released on other conditions.

## II.  DISCUSSION

> Since the United States began restricting immigration into this country in the late 19th century, it has distinguished between those noncitizens seeking entry into the country and those already residing within it. Noncitizens "stopped at the boundary line" who have "gained no foothold in the United States" do not enjoy the same constitutional protections afforded to persons inside the United States. But once a noncitizen enters the United States, "the legal circumstance changes," for the constitutional right to due process applies to all "persons" within our nation's borders, "whether their presence here is lawful, unlawful, temporary, or permanent." This distinction between noncitizens who have entered and reside in the United States and those who have not yet entered "runs throughout immigration law."

*Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1113 (D. Idaho 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (citations omitted).

Consistent with this distinction, "[t]wo statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. § 1225 and 1226." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. Sept. 23, 2025), *appeal filed*, No. 25-7429 (9th Cir. Nov. 25, 2025). As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).

Under § 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as an 'applicant for admission.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). Applicants for admission may be detained pending removal under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) applies to aliens who (*A*) are arriving in the

- 4 -

United States, *see* § 1225(b)(1)(A)(i) (the "arriving aliens provision"), or have been physically present in the United States for less than two years without being admitted or paroled, *see* § 1225(b)(1)(A)(iii) (the "designation provision"),[2] *and* (*B*) are inadmissible either for misrepresenting a material fact while attempting to gain admission to the United States or for lacking proper immigration documentation. *See* 8 U.S.C. § 1225(b)(1)(A); *see also* § 1182(a)(6)(C) (inadmissibility based on misrepresentation); § 1182(a)(7) (inadmissibility for lack of documentation). For these aliens, § 1225(b)(1) provides for expedited removal proceedings without further hearing or review, unless the alien expresses a fear of persecution or an intent to apply for asylum, in which

---

[2] This so-called "designation provision" further limits this group of aliens subject to expedited removal proceedings to certain categories of aliens expressly designated by the Secretary of Homeland Security, *see* § 1225(b)(1)(a)(ii), but the current scope of that designation is "the full scope of statutory authority," and thus all aliens who have not been admitted or paroled into the United States and who have not been physically present in the United States continuously for the two-year period prior to determination of inadmissibility are subject to expedited removal under § 1225(b)(1). *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025); *see also Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 619–20 (D.C. Cir. 2020) (providing a historic overview of groups designated under § 1225(b)(1)(a)(ii)); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62–64 (D.D.C. 2025) (same), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

case the alien is subject to mandatory detention pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal. *See* § 1225(b)(1)(B). *See generally Make the Rd. N.Y. v. Wolf,* 962 F.3d 612, 618–20 (D.C. Cir. 2020) (summarizing expedited removal provisions); *Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d 274, 291–92 (E.D.N.Y. 2025) (same); *Coal. for Humane Immigrant Rts. v. Noem,* 805 F. Supp. 3d 48, 59–64 (D.D.C. 2025) (same), *appeal filed,* No. 25-5289 (D.C. Cir. Aug. 11, 2025).

Section 1225(b)(2) is a "broader . . . catchall provision" that applies to other "applicants for admission" who are "seeking admission" to the United States.[3] *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings,* 583 U.S. at 287. Under § 1225(b)(2), an applicant for admission is placed into ordinary (not expedited) removal proceedings. *See* § 1225(b)(2)(A); *see also id.* § 1229a (describing ordinary removal proceedings before an immigration judge). With limited exceptions, however, an alien is subject to mandatory detention under § 1225(b)(2) while removal proceedings remain pending. *See* § 1225(b)(2)(A); *see also* § 1182(d)(5) (authorizing the Secretary of

---

[3] The statute expressly provides that § 1225(b)(2) does not apply to those to whom § 1225(b)(1) applies, as well as other categories not relevant here. *See* 8 U.S.C. § 1225(b)(2)(B).

Homeland Security to grant humanitarian parole to aliens awaiting removal proceedings); § 1225(b)(2)(C) (providing that aliens arriving on land from a foreign territory contiguous to the United States may be returned to that foreign territory pending removal proceedings, rather than be detained); *Quijada Cordoba*, 809 F. Supp. 3d at 1113 ("Section 1225(b) mandates detention without bond hearings, except for narrow humanitarian parole.").

Meanwhile, as noted above, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Such aliens who are already present in the United States may be detained pending removal under two separate provisions: § 1226(a) and § 1226(c).

Section 1226(a) prescribes a discretionary detention framework for these aliens when subject to removal proceedings, providing that: "On a warrant issued by the Attorney General,[4] an alien may be arrested and detained pending a decision on whether the alien is to be removed from

---

[4] This statutory authority to issue immigration arrest warrants has been delegated to a number of supervisory immigration officials listed in the applicable regulations. *See* 8 C.F.R. § 287.5(e)(2); *see also id.* §§ 236.1(b), 1236.1(b).

the United States." 8 U.S.C. § 1226(a). The statute further provides that such an alien may be released on bond while removal proceedings remain pending. *Id.* § 1226(a)(2). The relevant implementing regulations provide that a § 1226(a) detainee may be released on bond upon showing "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Immigration authorities[5] are tasked with an initial bond or custody determination, *see id.* §§ 236.1(c)(8), 1236.1(c)(8), after which the alien may request an individualized bond hearing before an immigration judge, *see id.* §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19 (setting out procedures for the review of bond determinations by immigration judges). *See generally Nielsen v. Preap*, 586 U.S. 392, 397 (2019) ("If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge (both exercising power delegated by the Secretary); and the alien may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.") (citations

---

[5] The same supervisory immigration officials authorized to issue arrest warrants. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

omitted). An adverse bond determination by the immigration judge can be appealed to the Board of Immigration Appeals. *See* 8 U.S.C. §§ 236.1(d)(3), 1236.1(d)(3). *See generally Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (summarizing § 1226(a) bond procedures).

Finally, "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. This subsection specifies certain criminal histories that require mandatory detention of aliens who would otherwise be eligible for a bond hearing under § 1226(a). *See* 8 U.S.C. § 1226(c). Such criminal aliens may only be released under very narrow circumstances involving a determination by the Attorney General that the alien's release is necessary for witness-protection purposes and the alien does not pose a flight risk or a danger to the community. *See id.* § 1226(c)(4); *see also Jennings*, 583 U.S. at 289.

The petitioner in this case, Adalberto Perez-Fuentes, has been detained by immigration authorities without a bond determination

pending disposition of his ordinary, § 1229a removal proceedings.[6] Liberally construing his pro se petition, Perez-Fuentes argues that, because he was detained within the interior of the United States, he is not properly subject to mandatory pre-removal-order detention under § 1225(b)(2). Rather, he may only be properly detained under § 1226(a), which requires that he be given an opportunity for an individualized bond hearing. In addition to this statutory argument, the petition may be liberally construed to argue that the petitioner's detention without an opportunity to be considered for release on bond violates his Fifth Amendment due process rights.[7]

The respondent, on the other hand, argues that § 1225(b)(2) does

---

[6] The parties appear to agree that the petitioner has been putatively detained without an opportunity for a bond determination pursuant to § 1225(b)(2). The respondent has identified no other basis for his detention. Moreover, the petitioner has not been placed in expedited removal proceedings, as would be expected for a § 1225(b)(1) detainee, he has no criminal record to qualify him for mandatory detention under § 1226(c), and immigration officials have refused to give him a bond hearing, as required under § 1226(a).

[7] Having found a statutory basis for relief, we do not reach any constitutional issues raised by the petitioner as alternative grounds for relief. *See generally Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of defending them.").

properly apply to the petitioner, and that it prescribes mandatory detention. The respondent further argues that applying § 1225(b)(2) here comports with due process.[8]

The respondent purports to have detained Perez-Fuentes pursuant to 8 U.S.C. § 1225(b)(2), which provides for mandatory detention without the opportunity for release on bond. But, liberally construed, the pro se petition contends that Perez-Fuentes could only be properly detained under 8 U.S.C. § 1226(a), and under that statute, he is entitled to an individualized bond hearing.

"[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025) (quoting 8 U.S.C. § 1225(b)(2)(A)), *appeal dismissed*, No. 25-1902 (1st Cir. Dec. 23, 2025); *see also Kashranov v. Jamison*, No. 2:25-cv-05555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) (citing *Martinez*); *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa.

---

[8] *See supra* note 7.

Dec. 22, 2025) (citing *Martinez* and *Kashranov*); *Carrero Romero v. Lowe*, No. 4:26-CV-00009, 2026 WL 296215, at *4 (M.D. Pa. Feb. 4, 2026) (citing *Ramirez-Montoya*). Significantly, "Section 1225(b)(2)(A) applies only to an alien who is *both* an applicant for admission and 'seeking admission.'" *Kashranov*, 2025 WL 3188399, at *6 (emphasis in original); *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov* and *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 406 (D.N.J. 2025)); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*).

Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Meanwhile, the phrase "seeking admission" is not defined in § 1225, and the courts of this circuit have construed the plain language of "seeking admission" to describe "active and ongoing conduct—physically attempting to come into the United States, typically at a border or a port of entry." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (citing *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (citing *Ramirez-Montoya*). "This reading preserves the distinction between 'seeking admission' and the separate term 'applicant for admission,'

ensuring that each phrase carries independent meaning." *Kashranov*, 2025 WL 3188399, at *6; *see also Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Kashranov*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Ramirez-Montoya*). It also comports with the Supreme Court's finding in *Jennings* that "§ 1225(b) applies primarily to aliens seeking entry into the United States." *Jennings*, 583 U.S. at 297; *Ramirez-Montoya*, 2025 WL 3709045, at *4 (quoting *Jennings*); *Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings* and *Ramirez-Montoya*). "In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country." *Carrero Romero*, 2026 WL 296215, at *4; *see also Kashranov*, 2025 WL 3188399, at *7 (considering the statutory context of § 1225(b)(2) and concluding that this provision "contemplates inspection and detention at or immediately following border crossing").

By contrast, as the Supreme Court has previously recognized, "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*). "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants

for their arrest and detention pending removal proceedings," and it "permits the Attorney General to release those aliens on bond." *Jennings*, 583 U.S. at 303; *see also Carrero Romero*, 2026 WL 296215, at *4 (quoting *Jennings*); *Ramirez-Montoya*, 2025 WL 3709045, at *5 ("Unlike § 1225(b)(2)(A), § 1226(a) provides for bond or conditional parole.") (citing 8 U.S.C. § 1226(a)(2)). "[U]nder Section 1226(a) and its implementing regulations, [an alien discretionarily detained pending removal proceedings] is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community[] or . . . that he is a flight risk, if it seeks to continue detaining him." *Gomes v. Hyde*, 804 F. Supp. 3d 265, 277 (D. Mass. 2025);[9] *see also Y.Z. v. Soto*, 812 F. Supp. 3d 459, 462–

---

[9] We note that, applying First Circuit precedent, the *Gomes* court stated that the government may prove that an alien is a danger to the community by clear and convincing evidence, or that he is a flight risk by the lesser preponderance-of-the-evidence standard. *See Gomes*, 804 F. Supp. 3d at 277 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)). The Third Circuit, however, has held that the government must prove either dangerousness *or* flight risk by clear and convincing evidence. *See German Santos v. Warden*, 965 F.3d 203, 213–14 (3d Cir. 2020) ("When the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence."); *see also Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 333 n.9 (3d Cir. 2021) ("[I]t is

(continued on next page)

63 (D.N.J. 2025) ("Noncitizens who are arrested after having lived in the United States for a while do not generally have to be detained. They are instead entitled to a bond hearing before an immigration court." (citing *Gomes*) (citations and footnote omitted)). *See generally Carrero Romero*, 2026 WL 296215, at *4 ("[I]f an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225. If they are arrested after having already entered the country, they are subject to detention under § 1226 and are entitled to a bond hearing.").

Here, § 1226(a), not § 1225(b)(2)(A), applies to the detention of Perez-Fuentes. We find that Perez-Fuentes is no longer seeking admission into the United States—at the time of his arrest and detention, he was not actively attempting to come into the United States at a border or port of entry. Rather, he is already here, having resided within the United States for an extended period of time. *See Kashranov*, 2025 WL

---

a 'settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government' to a 'clear and convincing evidence' standard in the context of civil detention . . . .") (quoting *German Santos*); *Luciano-Jimenez v. Doll*, 547 F. Supp. 3d 462, 465 (M.D. Pa. 2021) (quoting *German Santos*).

3188399, at *1 (finding that petitioner who lived in the United States for almost two years was not "seeking admission" but "already here"); *Ramirez-Montoya*, 2025 WL 3709045, at *5 (citing *Kashranov*). Thus, Perez-Fuentes may only be properly detained pursuant to § 1226(a), and therefore he is entitled to a bond hearing. *See Carrero Romero*, 2026 WL 296215, at *5. *See generally Patel v. O'Neill*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 (M.D. Pa. Dec. 8, 2025) ("The overwhelming majority of federal district courts that have addressed this issue have interpreted the INA to find that persons similarly situated to Petitioner—noncitizens who previously entered the United States and are currently residing in the United States—are not subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) but instead are subject to the discretionary detention pursuant to 8 U.S.C. § 1226(a) and accordingly are entitled to a bond hearing."); *id.* at *4 & n.7 (collecting Third Circuit district court cases).[10]

---

[10] *Accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 73, 75 (2d Cir. 2026) ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission. . . . Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but

*(continued on next page)*

## III.   CONCLUSION

For the foregoing reasons, the court concludes that the petitioner is currently detained pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2), and thus he is entitled to an individualized bond hearing. Accordingly, the petition will be granted, and the government will be ordered to provide the petitioner with an individualized bond hearing within twenty-one days or to release him from custody.

---

are apprehended at the 'threshold of initial entry.'"); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) ("[T]he text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior."); *Hernandez Alvarez v. Warden*, 175 F.4th 1258, 1262 (11th Cir. 2026) ("The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (holding that noncitizens without lawful status who had lived in the United States for years were not "seeking admission" and thus were not subject to § 1225(b)(2)(A)'s mandatory detention scheme); *Santillan Quiroz v. Mullin*, ___ F.4th ____, 2026 WL 1876709, at *7 (10th Cir. June 30, 2026) ("The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." (footnote omitted)); *id.* at *15 ("§ 1225(b)(2)(A) applies at the border while § 1226(a) applies to the interior.").

An appropriate order follows.

Dated: July ___6___, 2026

JOSEPH F. SAPORITO, JR.
United States District Judge